We have several cases on the docket this morning. We welcome you here to Houston and just remind you that we have a traffic light system. When the yellow light comes on, most of you are well aware you have two minutes, and when the red light signals, please conclude your argument as quickly as possible unless you're answering the court's questions. The other point I'd make is that we have read the briefs and record excerpts. We may not have read the entire record. In fact, we probably have not. And so we really need your record citations when those are appropriate. The first case of the morning is number 17-50392, United States v. Benjamin Vega-Garcia, and we'll hear first from Ms. Greenberg. May it please the court. Laura Greenberg for appellant Benjamin Vega-Garcia. Good morning. Morning. The issue in this appeal is whether Vega's prior Florida conviction for abuse of an elderly or disabled person qualifies for the 16-level crime of violence adjustment and the 2015 version of the illegal reentry guideline. The answer to that question is no. The abuse offense is not among the enumerated offenses in that crime of violence definition. It is not an offense that categorically has as an element the use, attempted use, or threatened use of physical force. Well, in order to move this along, I might point out that the government is not defending the categorical nature of that crime as a crime of violence. As I understand it, they're saying that there's harmless error. Yes, Your Honor. I read that as well. So I can go on to answer the government's argument that any error in this case is harmless. When the district court considers both what's now realized to be the incorrect range and what's deemed to be the correct range at sentencing, this court will find that the government has met its heavy burden to show harmless error, but only if the court makes it abundantly clear that it would impose the same sentence absent the guidelines calculation error. I don't believe the government can meet its burden under the record in this case. The court said a lot at sentencing. I scoured the sentencing transcript carefully, and at no point did the district court indicate that it would impose the same upward variant 72-month sentence had it considered the 24- to 30-month range to be the correct guidelines calculation range. It said it about as clearly as you can say in indirect language that something had been the same or close to it. I believe that the court used both direct and indirect language to explain that it considered the 37- to 46-month range inadequate, insufficient to punish, and that it would consider the 24- to 30-month range sufficiently inadequate to get Mr. Vega's attention. But that's not... So clearly the judge considered both ranges. I mean, it's not a situation where it's like the objection had been sustained. The judge knew, considered it, considered the range that the judge found to be correct, and then went way higher than that one. So how do we have harmful error here, or not harmless, or whatever the right phrasing is? Because of the requirement that this court has recognized that it's not sufficient simply for the district court to make clear that the range would have been insufficient. There is a difference between finding that a lower range would not have been sufficient to punish and that the range would have yielded the exact same sentence. Here the district court varied significantly from the 37- to 46-month range. Well, she noticed, and she did that because the fellow had just gotten off of a 60-month sentence for illegal reentry, immediately come back into the country, and he engaged in striking an elder, which some of us take very close to heart. I don't know about Judge Moses. Yes, Your Honor. But anyway, so since the 60-month sentence was clearly not enough to deter him from a life of crime, why would a 24- to 36-month, why would anyone think, why would even you think, that on remand she'd go with 36 months? Your Honor, I agree. I don't think the court would sentence within the 24- to 30-month range. I agree with that. The court would not find that sufficient to, as she put it, get Vega's attention, given that he had just served a 60-month sentence. But again, that's not the standard of determining whether the government has met its burden to show harmlessness. And, you know, I acknowledge that we have some cases that are saying sort of what you're saying, but we also have cases that plainly say that there is no magic words. I agree. But in all of the cases cited in the government's brief and in my briefing, in fact, probably 90 percent of the cases cited in our briefs in this case were cases where the district court explicitly said, I would impose the same sentence. So while we don't Those are magic words. And I mean, I really, you know, we have a judge who spends probably 90 percent of her time sentencing people. I don't think she doesn't understand the process or doesn't understand Booker or some such thing. I think she's got it. And here she did, and we have plenty of cases where they don't consider both ranges, and then I think that case law is very helpful to you. But here she clearly did, and she was clearly on a pathway, a mission, if you will, to be sure that Mr. Vega Garcia got a sentence that maybe would send the message that the 60 months didn't. So it's hard for me, absent magic words, absent us saying, look, district court, you must say, I would give the same sentence. And absent that statement, you're done. I mean, we've been very careful to not say magic words because that's kind of a gotcha on the district court, and that's not really what the appellate process is supposed to be. I agree. And I recognize that the court is not going to want to require some type of talismanic magic words, but these are more than magic words. And again, the cases are complete with instances where district courts, when defendants are arguing an objection, it doesn't come out of nowhere. A defendant is explaining to the district court, you're using the wrong guidelines range. And so a court has ample opportunity to say, here are my reasons for sentencing the way I'm sentencing, which a court is always required to do, and this court, in fact, did. But beyond that, to say, I understand that you're making a legal objection, and regardless of that legal objection, I would impose the same sentence. And the fact that we have so many instances, whether they're magic words or simply a district court understanding what this court is going to look at when it comes to determining whether an error is harmless, a court can explicitly do that. Well, let me, you know, some of us have advised the district courts time and time again to do that, and some of them do it with greater clarity than others. But let me just say, this is not a difficult issue. We are intimately familiar with this issue in general. So why don't you, not to foreshorten all that you may choose to argue longer, but if you have a couple of cases that you want to cite, we pretty much understand your argument. Yes, Your Honor. I believe the best cases to look at in terms of differentiating between when a court clearly expresses that it's going to find a lower range insufficient in no matter what, and finding that that's not the same thing as saying that I would impose the same sentence regardless of an error, are the cases, specifically Reyes-Contreras, where the court considered a higher range under the 2016 guideline that was being advocated by the defendant in that case. That guideline wasn't legally in effect yet, but the court was being asked to consider it as the applicable range, given that its effectiveness was imminent. And the court made clear that that would be insufficient, and then went on to sentence within what it believed to be the correct range, and later this court reversed that and said that was not, in fact, the correct range. The correct range was a 15 to 21. What's the bottom line? It's that even when a district court makes it clear that a higher range than the one that the court goes on to deem correct is insufficient, that we need more specificity. The court did not find that the government met its burden in Reyes-Contreras to show that the error was harmless, and that is because of the precision. And we're not talking about a substantive reasonableness review or whether the court is giving sufficient reasons for its sentence that's required under a procedural reasonableness. The court gave reasons, but that's still not the same as saying that the pull of a lower sentence in this case would not have led to a lower sentence in the 72-month sentence imposed. And I recognize that the court was strongly considering the 60-month sentence imposed on the prior illegal reentry conviction, but there is a lot of room between a 60-month sentence and a 72-month sentence. The court could have imposed an incrementally higher sentence given the pull of the lower guidelines range. And I think the court would in this case, but that's not my burden to show. The government has to show that the court would have. And we're talking precision here in a way that we do not talk about when we have an substantive reasonableness review. And so that I would cite Reyes-Contreras and also Ibarra-Luna, which is an early case where the district court essentially did the same thing. Well, let me just, since you decided you need to argue a lot, I will just point you out the lengthy paragraph where the judge goes into this defendant's past criminal history. Possession of a controlled substance felony that was not all counted. Illegal reentry, party to a crime, operating a vehicle without owner's consent, a felony, escape, a felony, criminal trespass, misdemeanor, disorderly conduct. And she says, and it goes on and on, thefts, trespass, operating motor. And then starting in 2004, you've got burglaries of conveyances, possession of burglary tools, criminal mischief with damage, petty theft, petty theft, another petty theft. Anyway. I understand, Your Honor. All right. And the district court, just to argue one last point. Plus he struck an elder. To argue one last point in that regard. The district court clearly did what it's supposed to do, required to do, and gave reasons for the upward variance since it imposed. And if I were standing before the court, which I would not be doing, arguing that this is a substantively unreasonable sentence, then I would have a hard time responding to that. But again, that's not the same as the precision required to show that the court would impose the precise same sentence. You know, let me just editorialize here. We understand your argument, but at some point, when the public defender chooses to appeal errors of what amount to elocution or allocution on the part of the district courts, I dare say, and I haven't talked to them, but some of them are probably going to react rather negatively to that as policy matter. And because, you know, resentencing imposes a serious burden. And you probably know more about this than I do, but I dare say a lot of these district judges come back and impose a very similar sentence to what they had before they got vacated and remanded. So I'm just saying, you know, there's a point of diminishing returns for these kinds of appeals. What has been your experience in resentencing in cases similar to this? In this particular district court, yes, I have seen the court impose the exact same sentence, but I've also been surprised to see the court give a lower sentence. And I think the court does consider the advisory guideline range as it's required to do, and it can affect the ultimate sentence imposed. So I would agree with Judge Jones that often we see the same sentence imposed. Again, that's not to say that the government has satisfied its burden to show harmlessness. Well, and of course we know that Judge Moses would act honorably and not in any way vengefully should this be remanded. Absolutely, Your Honor. We're not suggesting otherwise in any way. Thank you. All right, you have time for rebuttal. Mr. Durbin, long time no see. Yes, it has been about 20 years perhaps. I hope not that long, but a long time. I'm afraid it has. There's a lot of water under the bridge. I don't want to take much of the court's time. I think you clearly understand it. Judge Jolly, you ask an interesting question, what has been the experience with resentencings and these types of things. I tried to find some statistics from the Sentencing Commission out of my own curiosity, and I couldn't find them readily available. I think in this particular case, Judge Moses made very clear from the outset that what was controlling her decision was the defendant's criminal history, a lengthy criminal history. He had 19 convictions. He had 20 other arrests that he had no disposition, and she listed the convictions. She was also concerned that he had a number of immigration violations. He had three prior illegal entries in the Del Rio division back in the 80s, and then he had an illegal reentry out of Houston, and that's the one that he got the 60-month sentence for. She keyed in on that very early in the sentencing. Her concern was that she didn't think that sentence was adequate to get across to him that this is serious, don't come back. So I think if this were to go back for some reason, I think we clearly know Judge Moses would start at 60 months. A 60-month sentence made little impression on this defendant. I agree. So one assumes from everything that she said that she would impose a sentence above the one that he did not take seriously, which would be about 70 months. Well, what's interesting is that she started with the five years, which is what the 60-month sentence was, and in this one she went to six years, which is what 72 months was. Well, that's what I was going to say is that, yes, I understand the theoretical argument that counsel opposite has made about there's space between 60 and 72, and we can, again, I'm not great at math, but we can do the math and say that's true. But practically looking at this record, I just question that because it seems like there was a great logic to five years didn't do it, let's add a year, as opposed to adding, you know, three months or six months or some other number that's between 60 and 72. You know, to me that makes a lot of sense, and that seemed to be very much where she was heading, having considered, again, the now deemed to be correct range, the lower range, because you seem to have conceded the elderly abuse issue because you didn't argue it. Yes, we have not argued that. That concerns me about the summons as well, and that is she apparently used the enhancement to confect the ultimate summons that she imposed here, and we seem to be agreed that that enhancement is erroneous. I don't think she did. I don't think the record shows she did rely on that enhancement. That enhancement took the maximum up to, I think it was 57 months, and she was going to give more than 57 months because he got 60 months on the last illegal reentry. And I would point to the court two, there was a question about magic words, and there's two sites in the record. One is on page, record on appeal at page 162, and she is engaged in a conversation with defense counsel, and she makes reference to whichever guidelines I apply. And then she interrupts herself, and then she asks for clarification. Now, you're asking, this is level 13 criminal history category 4, but I think she was in her mind, and I think she's communicating it didn't matter to her which guidelines. She was going to make the guidelines findings, but she was not going to be bound by those guidelines, and she said very early on, this is a non-guidelines case. And then after the sentencing was done, page 175, she again made reference to regardless of the guidelines, and she was talking about trying to clarify the general objection that defense counsel was trying to make at the end. But I read both of those to be, if they're not magic words, they're pretty close to the magic words, that in her mind, guidelines don't matter. And our burden is to show that the erroneous guideline calculation didn't affect the sentence. And I don't see anything in this record that suggests that even if she had selected the 24 to 30 month sentence, that that would have changed what her calculation was. And her calculation was based on his conduct in relation to his prior illegal reentry. He got 60 months for that, and it didn't keep him out? I mean, nearly a tripling of the guideline sentence that was recommended absent the enhancement. 72 months would virtually triple what the guidelines would have called for. Is that correct? Two and a half to three times, yes. You're better at math than I am. But he had already had 60 months. Yeah, your point is she wasn't doing a multiplier of the guidelines range where that would be significant. She was saying five years didn't do it. Let's see if six years does. That's right. And then I would imagine that if he came back again after the six years, she'd say, how about seven, and eventually hope that Mr. Vega-Garcia finally understood the law about illegal reentry. Or he'd outgrow it and he'd stop coming back. Something like that. Made enough to retire back to Mexico. Something like that. But that's all I have unless the Court has further questions. We appreciate your succinctness. Thank you. Okay, Ms. Greenberg. Just very quickly a point on rebuttal. In response to Judge Jolly's question on whether or not the incorrect calculation of the range may have influenced the district court, and opposing counsel said 57 months was the maximum. But, in fact, the range under the 2015 guideline with the 16-level adjustment would have been 57 to 71 months. So the maximum would have been 71 months. And I think that that did have an impact, that had an anchoring effect on the district court's determination. Can you point to anything other than the math to support that? No, Your Honor, other than the recognition in prior cases. Melina Martinez, Supreme Court cases, cases in this Court. Actually, that seems to cut the other way because it seems like she could have been easily given what sounds like a guideline sentence. She could have said it would be a guideline sentence under that, you know, and given 71 months if she thought that was enough. But clearly she wasn't heading in that direction of all those different ranges. She was really looking at five years, now six. I'm not sure I agree with you on the clarity with which she was choosing a specific sentence. I understand the threshold appeal of the notion that five years wasn't enough, let's do six, because we think in terms of years, which makes sense, whereas the guidelines in district courts tend to think in terms of months. And so I think the 57 to 71 month range could have had that anchoring effect, the anchoring effect that's been recognized by the Supreme Court in Melina Martinez. So are you saying if she was sentenced to 71 months, you wouldn't be here? But she's sentenced to 72 months, and that's your argument, one month. No, no, Your Honor. They'd be here. I'd still be here. No, because she applied the 37 to 46 because of calculating 57 to 71. That's correct, Your Honor. And I just, I think that was really the only point I had to make to correct what was a misstatement. So if the court has no other questions, I'll yield the rest of my time. Thank you very much. Okay. Thank you.